UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SUZANNE RYAN-BEEDY, an
individual,

           Plaintiff,

    v.

THE BANK OF NEW YORK MELLON
fka THE BANK OF NEW YORK AS
TRUSTEE FOR THE BENEFIT OF
THE CERTIFICATE HOLDERS OF
THE CWALT, INC., ALTERNATIVE
LOAN TRUST 2004-25CB,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2004-
25CB; DITECH FINANCIAL, LLC,
and DOES 1-50, inclusive,

         Defendants.

CIV. NO. 2:17-1999 WBS EFB

MEMORANDUM AND ORDER RE: MOTION
TO DISMISS

           Plaintiff Suzanne Ryan-Beedy initiated this action

against defendants Ditech Financial, LLC ("Ditech") and the Bank

of New York Mellon fka The Bank of New York as Trustee for the

Benefit of the Certificate Holders of the CWALT, Inc. ("the Bank

of New York Mellon") for damages and equitable relief resulting

from defendants' alleged acts or omissions concerning the

residential mortgage loan modification transactions and

subsequent foreclosure of plaintiff's property.  Presently before the court are separate Motions to Dismiss by Ditech and the Bank of New York Mellon.  (Docket Nos. 18, 22.)

I.    Factual and Procedural Background

In September 2004, plaintiff obtained a $295,000 loan from American Mortgage Network, Inc. in order to refinance her property in Tahoma, CA ("the subject property").  (First Amended Compl. ("FAC") (Docket No. 16) ¶ 14.)  The subject property is a rental property and is not plaintiff's primary residence.  (Id. ¶ 15.)  This loan was secured by a Deed of Trust on the property, which was assigned to the Bank of New York Mellon on April 16, 2011.  (Id. ¶ 3.)

By July 2015, plaintiff was in default in the amount of $137,559.18.  A Notice of Trustee's Sale of the Property was recorded on October 27, 2015, and the sale was set for November 25, 2015.  Subsequently, on November 25, 2015, plaintiff filed for Chapter 13 bankruptcy protection.  (FAC ¶ 16.)  Accordingly, the sale did not proceed that day.

Plaintiff alleges that in August 2016, her husband contacted who he thought was the Bank of New York Mellon, but in reality he spoke with a representative from Residential Credit Solutions, plaintiff's mortgage servicer.  (Id. ¶ 17.) Unbeknownst to plaintiff, the Bank of New York Mellon had hired Residential Credit Solutions to service the subject loan.  (Id.) The Residential Credit Solutions representative allegedly told plaintiff's husband that due to accounting errors in the loan, plaintiff owed less than had been represented to her and was in fact "nearly caught up" on the loan.  (Id.)  The representative

further explained that if plaintiff stopped making her Chapter 13 payments and began making payments on the loan directly, Bank of New York Mellon would correct the accounting errors, modify the loan, and the loan would be brought current. (Id.) The agent also allegedly told plaintiff's husband that plaintiff should not begin making payments until she received the modification documents. (Id. ¶ 18.)

On August 11, 2016, relying on these representations from the Residential Credit Solutions agent, plaintiff moved to dismiss her Chapter 13 Bankruptcy Case. In her dismissal, she explained that her "financial and legal situation had unexpectedly changed." (Bank's Req. for Judicial Notice, Ex. R. (Pl.'s Decl. in Supp. of Mot. to Dismiss Bankruptcy).)[1] Plaintiff's motion was granted and her Bankruptcy Case was dismissed on August 12, 2016. However, she was unable to get anyone from Bank of New York Mellon or Residential Credit Solutions to help her obtain a loan modification. (Id. ¶ 21.)

By this point, plaintiff's loan servicer had changed to Ditech, but plaintiff did not have actual knowledge of this. On or about June 13, 2017, Ditech caused a Notice of Trustee's Sale to be recorded, with a sale date noticed for July 7, 2017. (Id. ¶ 23.) However, Ditech did not send notices to plaintiff's primary residence in Folsom, California, and instead only sent notices to the subject property in Tahoma. (Id.) Because of

---

[1] The court takes judicial notice of plaintiff's Declaration in support of her Ex Parte Motion to Dismiss her Bankruptcy case because it is a public record whose existence "can be accurately and readily determined from sources whose accuracy cannot readily be questioned." See Fed. R. Civ. P. 201(b).

this, plaintiff did not learn of the noticed sale until on or about June 23, 2017, when a friend informed plaintiff of the notice that had been posted on the door. (Id.)  Plaintiff subsequently contacted the number on the Notice of Trustee's Sale on June 27, and it was during this conversation that plaintiff first learned that Ditech was, and had been, her loan servicer. (Id. ¶ 24.)  The next day, plaintiff contacted Ditech directly, inquiring into how she could prevent the sale.  (Id. ¶ 25.) During this conversation, plaintiff was informed that Ditech had been sending all communications to plaintiff's former attorney from a previous litigation that had ended in settlement years earlier, and not to her bankruptcy attorney whose representation post-dated the prior litigation.  (Id. ¶ 26.)

On June 29, 2017, plaintiff spoke with a Ditech representative named "Kevin" who informed her that if she submitted a complete modification application prior to the scheduled sale date, the foreclosure would be automatically placed on hold as the application was reviewed.  (Id. ¶ 28.)  In response, plaintiff faxed and mailed her application documents to Ditech.  (Id. ¶¶ 30-32.)  On July 5, 2017, plaintiff checked the status of her application online and confirmed that all documents had been received.  (Id. ¶ 33.)  However, on July 6, Ditech informed plaintiff that she in fact needed to send one more document.  (Id. ¶ 34.)  Plaintiff immediately complied and faxed that document.  (Id.)  A Ditech representative named "Paul" then confirmed with plaintiff that her document had been received and the application was now complete.  (Id.)  Despite this, the scheduled foreclosure sale occurred the next day, on July 7,

2017, and the subject property reverted to Bank of New York Mellon via a credit bid.  (Id. ¶ 35.)

Following the foreclosure, plaintiff spoke with a Ditech representative named "Sean" and explained to him that she and her husband had spoken to at least seven Ditech agents who had ensured them that if plaintiff submitted a complete modification packet before the sale date, the sale would definitely be postponed.  (Id. ¶ 36.)  "Sean" explained that those agents had not been telling the truth, that the sale was never going to be postponed, and that Ditech often rejected modification applications.  (Id.)  Days later, on or about July 17, 2017, after the foreclosure had occurred, plaintiff learned that Ditech had taken over as her loan servicer in or around February 2016, while her Chapter 13 Bankruptcy had still been in effect.  (Id. ¶ 38.)

Plaintiff filed this action on December 8, 2017, alleging: (1) Intentional Misrepresentation/False Promise; (2) Negligent Misrepresentation; (3) Promissory Estoppel; (4) Negligence; (5) Wrongful Foreclosure; (6) Intentional Infliction of Emotional Distress; and (7) Violation of Business and Professions Code § 17200.

II.  Legal Standard

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility." <u>Ashcroft v. Iqbal</u>, 566 U.S 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57). In deciding whether a plaintiff has stated a claim, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008).

III. <u>Discussion</u>

Plaintiff brings claims one through three only against the Bank of New York Mellon, as trustee, and Does one through fifty. Claims four through ten are alleged against the Bank of New York Mellon and Ditech, the loan servicer. Plaintiff alleges that an agency relationship existed between Ditech and Bank of New York Mellon, as trustee, as well as between Residential Credit Services, a non-party, and Bank of New York Mellon, as trustee. The Bank of New York Mellon allegedly authorized both of these financial institutions to represent and bind the Bank in regard to a modification of the loan. Plaintiff therefore argues that because both of these entities were acting as a servicer of the subject loan and agent of the Bank of New York Mellon, the Bank as principal is liable for all of the alleged acts of its agents.

A.    <u>Claims One and Two</u>

Plaintiff's first and second claims are alleged against

the Bank of New York Mellon for intentional

misrepresentation/false promise and negligent misrepresentation.

These two claims are based on plaintiff's allegations that a

Residential Credit Solutions employee attempted to induce

plaintiff to give up her Chapter 13 bankruptcy protections by

convincing her that the Bank of New York Mellon would engage in a

loan modification process with her.  In reality, plaintiff

alleges, the Bank of New York Mellon never had any intention of

engaging in this process or of approving a loan modification.

These claims are further based on the allegation that this

Residential Credit Solutions representative never informed

plaintiff that Ditech was her loan servicer.  Plaintiff argues

that as a result of these statements, she dismissed her

bankruptcy case, lost her bankruptcy protections, and thus the

subject property was sold at a trustee's sale.

The elements of a cause of action for intentional

misrepresentation/false promise, which is a subspecies of fraud,

are (1) a material misrepresentation; (2) knowledge of falsity;

(3) intent to defraud or induce reliance; (4) justifiable

reliance; and (5) resulting damage.  White v. J.P. Morgan Chase,

Inc., 167 F. Supp. 3d 1108, 1114 (E.D. Cal. 2016), aff'd sub nom.

White v. JPMorgan Chase & Co., 702 F. App'x 642 (9th Cir. 2017).

A cause of action for negligent misrepresentation must allege the

same elements, "except that a plaintiff need not show that the

defendant knew of the falsity of the statement, but rather that

the defendant lacked reasonable ground for believing the

statement to be true."  Marble Bridge Funding Grp., Inc. v. Euler

Hermes Am. Credit Indem. Co., 225 F. Supp. 3d 1034, 1039 (N.D.

Cal. 2016).

### 1. Plead Fraud with Specificity

Because these claims allege fraudulent activity, plaintiff must satisfy the heightened pleading standard of Rule 9(b) and identify "the who, what, when, here, and how" of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Defendant argues that plaintiff has not satisfied this heightened pleading requirement. However, the Ninth Circuit has explained that the specificity requirements for pleading fraud "may be relaxed as to matters within the opposing party's knowledge." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989). Further, "[w]hen the allegations otherwise permit the defendant to defend against the charges, this court is not required to dismiss the complaint for plaintiffs' failure to identify a specific representative as the source of a false representation." Ferguson v. JPMorgan Chase Bank, N.A., Civ. No. 2:14-328 KJM KJN, 2014 WL 2118527, at *9 (E.D. Cal., May 21, 2014).

Here, plaintiff alleges that a representative from Residential Credit Solutions spoke to plaintiff's husband "in or around" August 2016 and explained that "if Plaintiff simply dropped her Chapter 13 bankruptcy, [Bank of New York Mellon] would work with Plaintiff to modify the Subject Loan and bring the loan current." (FAC ¶ 63.) Although plaintiff is unable to name the specific representative, she has pled a specific misrepresentation/false promise (i.e. the "promise" to work with plaintiff to modify her loan), the general time period in which the statement occurred, the fact that the statement came from a

representative of Residential Credit Solutions, and the fact that the communication took place over the phone.  Accordingly, "the court finds plaintiff[] [has] sufficiently pled the time, place, and specific content of" the alleged misrepresentation "so as to allow defendant to defend against plaintiff's misrepresentation claims."  Ferguson, 2014 WL 2118527, at *10, citing Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990-91 (2004).  Despite the informational gaps in plaintiff's complaint, it does not appear that defendant would be at all prejudiced or prevented from preparing a defense, particularly since defendant is alleged to be in a superior position to know the information. (FAC ¶ 62; see also West v. JPMorgan Chase Bank, N.A., 216 Cal. App. 4th 780, 790 (4th Dist. 2013) (plaintiff did not have to identify the specific company agent because that information was "uniquely within [defendant's] knowledge.").)  Accordingly, plaintiff has met the specificity requirement.

> ### 2.    Falsity/Intent Not to Perform

Bank of New York Mellon argues that plaintiff has failed to plead that the alleged representation--the promise that if plaintiff dismissed her bankruptcy case then defendant would work with her on a loan modification--was false or that it was a promise made without intent to perform.  (Bank of New York Mellon's P. & A. ("Bank's P. & A."), 8:11-9:12 (Docket No. 22).) In the complaint, plaintiff alleges that Bank of New York Mellon never had any intention of working with plaintiff on a loan modification.  In support, plaintiff explains that after she dismissed her bankruptcy case, the Bank never contacted her again, never sent her any loan modification documents, and failed

to inform her that her loan servicer had changed.  Further,
plaintiff alleges that the Bank did in fact foreclose on the
subject property without first modifying plaintiff's loan.

In Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218 (2d
Dist. 2011), the plaintiff presented similar allegations, arguing
that U.S. Bank promised to work with plaintiff on a loan
modification, in response plaintiff did not seek Chapter 13
protection and submitted financial documents to her loan
servicer, and the lender foreclosed regardless.  The court found
that "U.S. Bank never intended to work with [plaintiff] to
reinstate and modify the loan.  The bank so promised only to
convince [plaintiff] to forgo further bankruptcy proceedings,
thereby permitting the bank to lift the automatic stay and
foreclose on the property."  Id. at 224.  From this, the court
concluded that plaintiff's allegations were sufficient to state a
claim for fraud.  Id.  Based on the similarities between Aceves
and this case, the court here similarly concludes that plaintiff
has in fact adequately pled falsity and intent not to perform.

3.   Justifiable Reliance

The Bank of New York Mellon argues that plaintiff could
not have "reasonably relied" on the purported representations
because an agreement to modify a mortgage comes within the
statute of frauds and therefore must be in writing.  (Bank's P. &
A. at 9.)  However, plaintiff is not seeking to enforce a
modified loan agreement--which would be subject to the statute of
frauds--but instead is merely arguing that defendant "broke its
promise to negotiate with her toward a mutually agreeable
modification."  Aceves, 192 Cal. App. 4th at 226.  As in Aceves,

"the question is simply whether [the Bank of New York Mellon]
made and kept a promise to negotiate with [plaintiff]." Id. In
this type of situation, the statute of frauds does not apply and
thus the agreement did not need to be in writing.

### 4. Resulting Damage

The Bank argues that if plaintiff suffered any damages,
they were a result of her knowing nonpayment. According to the
Bank, the sole cause of plaintiff's foreclosure was non-payment
of her loan, and thus plaintiff has not, and allegedly cannot,
state a complete causal relationship between the foreclosure and
the bank's alleged misrepresentations. (Bank's P. & A. at 10.)
However, plaintiff specifically alleges that she "was ready,
willing and able to continue making her Chapter 13 payments" when
she was induced by the Bank to stop making the payments in
reliance on their promise. (FAC ¶ 19.) Further, she alleges
that she had a number of other options to save her home from
foreclosure, including selling the subject property to her
husband or reinstating her bankruptcy protection. (Id. ¶ 40.)
Accordingly, accepting the allegations of the complaint as true,
had it not been for the Bank's promises plaintiff could have
saved her home from foreclosure, and thus her failure to do so
was caused by the Bank's false promises. Therefore, plaintiff
has adequately pled causation and satisfied the resulting damage
requirement. Accordingly, the court concludes that plaintiff has
adequately pled her first and second causes of action and will
deny the Bank's Motion to Dismiss as to these claims.

### B. Claim Three

Plaintiff's third claim for promissory estoppel

requires (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) reasonable and foreseeable reliance; and (4) injury as a result of that reliance. <u>White</u>, 167 F. Supp. 3d at 1113.

### 1. <u>Clear and Unambiguous Promise</u>

"A promise is an indispensable element of the doctrine of promissory estoppel." <u>Aceves</u>, 192 Cal. App. 4th at 226. The promise must "be clear and unambiguous in its terms." <u>Id.</u>, quoting <u>Garcia v. World Savings, FSB</u>, 183 Cal. App. 4th 1031, 1044 (2d Dist. 2010). "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." <u>Id.</u> (internal citations omitted).

Here, it is alleged that the Bank of New York Mellon, via its Residential Credit Solutions representative, agreed to work with plaintiff on a loan modification if she no longer pursued her Chapter 13 bankruptcy case and stopped making payments. (FAC ¶ 78.) This is the exact promise U.S. Bank allegedly made to plaintiff in <u>Aceves</u>, in which the court ruled that such a promise is clear and unambiguous because "[i]t indicates that [defendant] would not foreclose on [plaintiff's] home without first engaging in negotiations with her to . . . modify the loan on mutually agreeable terms." 192 Cal. App. 4th at 226.

The cases that defendant cites are inapposite.  In all of those cases, including Laks v. Coast Fed. Sav. & Loan Ass'n, plaintiffs applied for a loan and attempted to rely on promissory estoppel in arguing that the lender was bound to make the loan. In such cases, California courts have been clear that the alleged promise to make a loan "was unclear and ambiguous because it did not include all of the essential terms of a loan, including the identity of the borrower and the security for the loan."  Id. However, here, as was the case in Aceves, plaintiff alleges that the Bank of New York Mellon promised to "work with her" to find a solution to avoid foreclosure.  "Thus, the question here is simply whether [defendant] made and kept a promise to negotiate with [plaintiff], not whether, as in Laks, the bank promised to make a loan or, more precisely, to modify a loan." (Id.)  At least one other judge in this district has agreed with the Aceves court, finding that "[a] bank's alleged promise to negotiate with a borrower to reinstate and modify a loan if the borrower would forgo a bankruptcy petition is sufficiently clear and unambiguous to trigger promissory estoppel."  Beltz v. Wells Fargo Home Mortgage, Civ. No. 2:15-1731 TLN CKD, 2017 WL 784910, at *8 (E.D. Cal. Mar. 1, 2017).

        2.    Actual, Reasonable, and Detrimental Reliance

         Plaintiff alleges that she actually relied on New York Bank of Mellon's representations as she gave up her Chapter 13 bankruptcy protections and attempted to obtain a loan modification, and that her reliance was justified because she thought, and nobody told her otherwise, that the Bank was the

servicer of her loan and had the power to grant her a loan
modification.  (FAC ¶ 63.)  The bank "promised to work with
[plaintiff] to modify the loan.  That would have been more
beneficial to [plaintiff] than the relief she [was obtaining]
under chapter 13."  Aceves, 192 Cal. App. 4th at 227.  Thus, the
Bank of New York Mellon "presented [plaintiff] with a compelling
reason to opt for negotiations with the bank instead of
[continuing to receive] bankruptcy relief."  Id.  From this, the
court concludes, as it did in Aceves, that plaintiff reasonably
relied on Bank of New York Mellon's promise, that the bank
reasonably expected her to so rely, and that it was foreseeable
that she would do so.  Accordingly, the court concludes plaintiff
has adequately alleged promissory estoppel and will deny the
Bank's Motion to Dismiss this claim.

C.    Claims Four and Five

Plaintiff's fourth and fifth claims are again for
intentional misrepresentation/false promise and negligent
misrepresentation, but this time the claims are alleged against
all defendants.  These causes of action are based on allegations
that plaintiff spoke with various Ditech representatives, after
learning that Ditech was in fact her loan servicer, who told her
that the foreclosure sale scheduled for July 7, 2017, would be
postponed if plaintiff submitted a complete loan modification
application.  (FAC ¶ 88.)  Although plaintiff submitted a
completed modification application before the scheduled sale
date, and received confirmation from a Ditech representative
named "Paul," Ditech went ahead with the foreclosure. (Id. ¶ 34-
35.)  After the foreclosure, "Sean," another Ditech

14

representative, purportedly told plaintiff that the agents she had previously spoken with had not told the truth and he explained that the sale was never going to be postponed. (Id. ¶ 36.) Plaintiff alleges that she forewent a multitude of other options to prevent foreclosure, including reinstating her bankruptcy, because she had been told a foreclosure would not occur. (Id. ¶¶ 40, 888, 100.)

In response to these allegations, defendants argue that (1) plaintiff fails to allege sufficient facts to plead falsity or a lack of reasonable grounds to believe the statements to be true and (2) plaintiff cannot allege justifiable reliance based on an oral agreement.

Ditech argues, and plaintiff does not deny, that plaintiff fails to allege that "Sean knew the other alleged speakers from Ditech or talked with them about their alleged statements to Plaintiff, her Loan, or any potential modification thereof." (Ditech P. &. A. at 7 (Docket No. 18).) However, that omission is of no import. Plaintiff does not allege that Sean's statements were false, but rather that his statements, which the court must accept as true for the purposes of a 12(b)(6) motion, provide plaintiff with information and belief that the prior representatives' statements were false, and were either known to be false, made without the requisite intent to perform, or made without a reasonable basis for believing they were true.

Further, California courts have concluded that an oral representation that a foreclosure sale would not take place constitutes a material misrepresentation of fact if the sale does in fact occur despite the assurances to the contrary. Lueras v.

15

BAC Home Loan Servicing, LLP, 221 Cal. App. 4th 49, 69 (4th Dist. 2013). In Lueras, plaintiff was told that his upcoming foreclosure sale would be postponed so he could finalize his loan modification, but his home was sold at a foreclosure sale a few days later. In that case, the court determined that this type of misrepresentation is sufficient to form the basis of a claim for both negligent and intentional misrepresentation. Id. at 79. Accordingly, the court finds that here plaintiff has in fact alleged sufficient facts to plead these causes of action.

This court is similarly unpersuaded by defendants' second argument--that plaintiff was not permitted to rely on an oral promise that a foreclosure sale would be postponed because this agreement falls within the statute of frauds and therefore needed to be in writing. As explained above, the promise alleged to be false is that if plaintiff submitted a complete modification application before the date of the sale, the foreclosure sale would be postponed. Plaintiff does not allege that the promise itself was the loan modification; the promise instead was merely one to stop a foreclosure, and as such had no impact on the terms of the loan itself. Therefore, it cannot be considered a promise to modify a contract, which would need to be in writing.

Defendants attempt to rely upon Secrest v. Security Nat'l Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544 (4th Dist. 2002), a case involving a forbearance agreement that modified the terms of the loan agreement and therefore needed to be in writing. However, the Secrest court held that even if the statute of frauds were to otherwise apply, which the court here

16

finds that it does not, full performance by one side takes the agreement out of the statute of frauds "and the party who performed may enforce it against the other." Id. at 555. Here, plaintiff alleges that she did what was required of her by submitting a complete modification application prior to the scheduled sale date. Thus, even if the statute of frauds applies, plaintiff's full performance would nullify such a defense.

The Bank of New York Mellon argues that plaintiff's supposed full performance does not qualify as "sufficient consideration for an oral modification agreement," and thus full performance by plaintiff does not suffice. Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1197 (S.D. Cal. 2010). However, the only case law defendant cites in support of this argument is inapposite. In Mehta, plaintiff alleged that defendant's employee orally agreed that the scheduled sale would not go forward. Id. However, the employee's "statement placed no conditions or expectations on Plaintiff," and thus could not satisfy the consideration requirement. Id. Conversely, in the present case, in exchange for the promise to postpone the sale, plaintiff had to give up her Chapter 13 bankruptcy protections and submit a completed loan modification application, which she did. Accordingly, the court determines that plaintiff's compliance with these conditions is sufficient to remove the agreement from the statue of frauds, and therefore the court will deny defendants' Motions to Dismiss with regard to claims four and five.

D.   Claim Six

Plaintiff's sixth claim is again for promissory estoppel, this time based on Ditech's purported promises to postpone the foreclosure sale if plaintiff submitted a complete loan modification application.  Both defendants move to dismiss this claim based on one argument--that plaintiff could not have reasonably relied on these promises, and thus has failed to plead promissory estoppel, because the alleged promises were made orally and as such are unenforceable.  However, as explained above, Ditech's promise to negotiate did not need to be in writing.  Accordingly, the court will deny defendants' Motions to Dismiss this claim.

E.     Claim Seven

Plaintiff's seventh claim for negligence alleges that defendants had a duty to act reasonably "in handling Plaintiff's loan modification as well as in reasonably communicating with Plaintiff as soon as it acquired the servicing rights to the Subject Loan."  (FAC ¶ 114.)  Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  Nymark v. Heart Fed. Savings & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).  Plaintiff attempts to rely on Alvarez v. BAC Home Loan Servicing, L.P., 228 Cal. App. 4th 941, 949 (1st Dist. 2014) to argue that loan servicers are "required to exercise reasonable care in their dealings with borrowers seeking a loan modification."

However, this court has previously explained "that financial institutions do not owe a common law duty of care to

borrowers . . . [and] the reasoning in the subsequent <u>Alvarez</u> and <u>Daniels</u> California Court of Appeals decisions do not change the court's view." <u>Willis v. JPMorgan Chase Bank, N.A.</u>, 250 F. Supp. 3d 628, 633 (E.D. Cal. 2017). This court went on to conclude that "a loan servicer does not owe a borrower a common law duty of care in processing a loan modification application." <u>Id.</u> at 634.

Plaintiff correctly points out that within this district Judges Mueller and Nunley have disagreed and have found that a lender does owe a duty of care to borrowers seeking a loan modification. <u>See</u> <u>Martinez v. Flagstar Bank, FSB</u>, Civ. No. 2:15-1934 KJM CKD, 2016 WL 3906810, at *8 (E.D. Cal. July 19, 2016); <u>see also</u> <u>Meixner v. Wells Fargo Bank, N.A.</u>, 101 F. Supp. 3d 938 (E.D. Cal. 2015)(Nunley, J.); <u>but see</u> <u>Shupe v. Nationstar Mortgage LLC</u>, 231 F. Supp. 3d 597, 693-06 (E.D. Cal. 2017)(England, J.)(finding no duty of care even during loan modification process).

This court previously recognized and discussed the fact that "[j]udges in this district are divided on this question." <u>Willis</u>, F. Supp. 3d at 633. Notwithstanding these differing views, this court has remained unpersuaded that financial institutions, even in the case of a loan modification, owe a duty of care to borrowers. Here, the court again reaffirms this conclusion and relies upon the Ninth Circuit, which has found that a lender "did not have a common law duty of care to offer, consider, or approve a loan modification, or to explore and to offer [the borrower] foreclosure alternatives." <u>Deschaine v. IndyMac Mortg. Services</u>, 617 Fed. App'x 690, 693 (9th Cir.

1   2015)(citing <u>Lueras</u>, 221 Cap. App. 4th at 68).  Accordingly,

2   because defendants did not owe plaintiff a duty of care, the

3   court must dismiss plaintiff's negligence cause of action.

4           F.    <u>Claim Eight</u>

5                 A claim for wrongful disclosure requires that:

6                 (1) the trustee or mortgagee caused an illegal,
                  fraudulent, or willfully oppressive sale of real
7                 property pursuant to a power of sale in a
                  mortgage or deed of trust; (2) the party
8                 attacking the sale . . . was prejudiced or
                  harmed; and (3) . . . the trustor or mortgagor
9                 tendered the amount of the secured indebtedness
                  or was excused from tendering.
10

11  <u>Rockridge Tr. v. Wells Fargo, N.A.</u>, 985 F. Supp. 2d 1110, 1145

12  (N.D. Cal. 2013) (quoting <u>Lona v. Citibank, N.A.</u>, 202 Cal. App.

13  4th 89, 104 (6th Dist. 2001)).

14          Defendants argue that plaintiff fails to allege an

15  illegal, fraudulent, or willfully oppressive sale, or that she

16  has failed to allege tender.  The court disagrees.  Plaintiff

17  alleges the foreclosure was wrongful in that it violated rules

18  prohibiting dual tracking--the practice by which a lender

19  processes a loan modification while simultaneously pushing

20  foreclosure.  Plaintiff avers that the Bank failed "to properly

21  review her complete modification application and simply [moved]

22  forward with the foreclosure sale despite assurances that the

23  foreclosure sale would necessarily be postponed upon submission

24  of the complete application."  (FAC ¶ 119.)

25          However, the rule prohibiting dual tracking "applies

26  only to 'owner-occupied residential real property.'"  <u>Badame v.</u>

27  <u>J.P. Morgan Chase Bank, N.A.</u>, 641 F. App'x 707, 711 (9th Cir.

28  2016) (citing Cal. Civ. Code § 2924.14(a).)  In this case, it is

undisputed that plaintiff was not living at the subject property, and thus that it was not "owner-occupied." Accordingly, even if dual tracking occurred in this case, it was not prohibited by statue.

However, in Majd v. Bank of America, N.A., 243 Cal. App. 4th 1293, 1303 (4th Dist. 2015), as modified (Jan. 14, 2016), the court found that dual tracking is an inherently unfair business practice, and as such it alone is sufficient to state a claim for wrongful foreclosure. In that case, the court ruled that California Civil Code § 2923.6, which prohibits dual tracking, was not directly applicable to the case because the lender's actions predated the provision. Nevertheless, the court concluded that the dual tracking which had occurred was "unfair,"[2] even if not illegal by statute. Id. Here, similarly, because the subject property was not owner-occupied, the prohibition against dual tracking is not directly related. However, defendant's actions, though admittedly not "illegal," under the statute are sufficiently "unfair" such that they may serve as the basis of a wrongful foreclosure claim.

Defendant's argument regarding tender is also unpersuasive. Generally, "[a] full tender must be made to set aside a foreclosure sale." Stebley v. Litton Loan Servicing, LLP, 202 Cal. App. 4th 522, 526 (3d Dist. 2011). "The purpose of the tender rule is to dismiss suits at an early stage, where, despite any irregularities in the lender's foreclosure

---

[2] An "unfair" practice is defined as a practice that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Majd, 243 Cal. App. 4th at 1303.

21

1    activities, the borrower will ultimately have to pay the amount

2    due on the loan, but cannot do so." Majd, 243 Cal. App. 4th at

3    1306.  However, in this case plaintiff is not attempting to set

4    aside the sale due to alleged procedural irregularities.

5    Instead, she is arguing that the sale never should have occurred

6    because she only dismissed her bankruptcy case due to the

7    assurances provided to her by the Bank via Residential Credit

8    Solutions and Ditech.  Further, plaintiff was in the process of

9    attempting to modify her loan, the purpose of which "is to avoid

10   foreclosure despite the borrower being incapable of complying

11   with the terms of the original loan.  It would be contradictory

12   to require the borrower to tender the amount due on the original

13   loan in such circumstances." Id.

14       The court therefore concludes that because "a loan

15   modification is an alternative to foreclosure that does not

16   require the borrower to pay pursuant to the terms of the original

17   loan," tender is not required under the circumstances of this

18   case.  Id.  Accordingly, the court will deny defendants' Motions

19   with regard to plaintiff's wrongful foreclosure claim.

20       G.    Claim Nine

21       In order to state a claim for intentional infliction of

22   emotional distress, plaintiff must show "(1) extreme and

23   outrageous conduct by the defendant with the intention of

24   causing, or reckless disregard of the probability of causing,

25   emotional distress; (2) the plaintiff's suffering severe or

26   extreme emotional distress; and (3) actual and proximate

27   causation of the emotional distress by the defendant's outrageous

28   conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009).  The

conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.

Defendant correctly indicates that the mere act of enforcing a good faith foreclosure falls short of outrageous conduct required for this type of claim. See Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010). However, this case does not involve a "mere foreclosure." Instead, the facts are far more analogous to those in Ragland v. U.S. Bank National Association, 209 Cal. App. 4th 182 (4th Dist. 2012), in which case the plaintiff's lender induced her to miss payments while it reviewed her for a loan modification, and then foreclosed on her anyway even after she attempted to continue making her payments. In that case, defendant argued that it proceeded with a lawful foreclosure after plaintiff defaulted, it had a legal right to do so, and accordingly plaintiff could not plead an intentional infliction of emotional distress. Id. at 205. However, the court did not accept that argument, explaining that the argument "assumes [defendant] had the right to foreclose, an issue at the heart of the case."

That same issue is precisely what is at the heart of the present case. If plaintiff is able to prove any of her other claims, then defendant would not have had the right to foreclose. Accordingly, defendants' conduct, if proven, could be found so extreme as to exceed all bounds of decency in our society, and therefore the court will deny defendants' Motions to Dismiss this cause of action.

H.   Claim Ten

Plaintiff's tenth claim is for a violation of the

23

Unfair Competition Law ("UCL"), California Business and Professions Code § 17200. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. An act violates the UCL if it is either "unlawful," "unfair" or "fraudulent." Rubio v. Capitol One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010).

As in Lueras, the court concludes that "it is fraudulent or unfair for a lender to proceed with foreclosure after informing a borrower he or she has been approved for a loan modification, or telling the borrower he or she will be contacted about other options and the borrower's home will not be foreclosed on in the meantime." 221 Cal. App. 4th at 85. It is also "fraudulent or unfair for a lender to misrepresent the status or date of a foreclosure sale." In this case, plaintiff contacted Ditech and was told that her foreclosure sale would not occur so long as she submitted a loan modification application, which she did. Plaintiff was promised that while her application was pending, her home would not be foreclosed on, and yet it was. Accordingly, plaintiff has alleged that defendants engaged in conduct that amounted to fraudulent or unfair practices, and therefore the court will not dismiss plaintiff's UCL claim.

IT IS THEREFORE ORDERED that the Bank of New York Mellon's Motion to Dismiss (Docket No. 22) and Ditech's Motion to Dismiss (Docket No. 18) be, and the same hereby are, GRANTED in part and DENIED in part as follows:

1. Bank of New York Mellon's and Ditech's Motions to Dismiss plaintiff's negligence claim are GRANTED; and

1    2. Bank of New York Mellon's and Ditech's Motions to Dismiss
2       are DENIED as to all other claims.
3          The court denies plaintiff leave to amend because it
4   concludes that any amendment would be futile.
5
6   Dated:   February 22, 2018
7                                    WILLIAM B. SHUBB
8                                    UNITED STATES DISTRICT JUDGE
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28